# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

|  |  |  |
|---|---|---|
| ASSOCIATED INDEMNITY CORPORATION, | ) ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| JOSHUA HUGHES, ASHLEY HUGHES, D/B/A/ HUGHES FARM, and DAVID CHAMBERS, | ) ) ) | FILE NO. 4:18-cv-00201-HLM |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Associated Indemnity Corporation ("Associated Indemnity"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, files this brief in support of its motion for partial summary judgment seeking a declaratory judgment that Associated Indemnity has no duty to defend and no duty to indemnify Defendants, Joshua Hughes and Ashley Hughes (collectively "Hughes"), for the claims asserted against them in the underlying liability lawsuit filed by Defendant, David Chambers ("Chambers").[1]

---

[1] In its complaint, Associated Indemnity has also asserted a claim to seek reimbursement of defense costs. This cause of action is predicated on *Illinois Union Ins. Co. v. NRI Const., Inc.,* 846 F. Supp. 2d 1366, 1377 (N.D. Ga. 2012). Because this cause of action is not ripe until there is a ruling from this Court that Associated Indemnity never had a duty to defend the Hughes for the Underlying Lawsuit, Associated Indemnity reserves its right to seek reimbursement from the Hughes after the present summary judgment has been decided.

## INTRODUCTION

The Hughes own a chicken farm in Rising Fawn, Georgia. They have been sued by their neighbor, Chambers, in *David Chambers v. Koch Foods of Gainesville, LLC et al,* No. C 04638-5 (Superior Court of Dade County, Georgia) ("Underlying Lawsuit"). The Underlying Lawsuit alleges that the Poultry Farm is causing water runoff and noxious odors onto Chambers' uninhabited, undeveloped, and unoccupied land. The Hughes have sought defense and indemnity from Associated Indemnity for the Underlying Lawsuit. Although Associated Indemnity is presently defending the Hughes pursuant to a reservation of rights, by way of this action, Associated Indemnity seeks a declaration from this Court that Associated Indemnity has neither the duty to defend nor the duty to indemnify the Hughes.

"An insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy." Pilz v. Montichello Ins. Co., 267 Ga. App. 370, 371, 599 S.E.2d 220, 221 (2004) Batson-Cook Co. v. Aetna Ins. Co., 200 Ga. App. 571, 572, 409 S.E. 2d 41, 42 (1991). Here, well-established Georgia law supports Associated Indemnity's position that, based on the allegations of the complaint in the Underlying Lawsuit, Associated Indemnity does not, and never had, a duty to defend the Hughes for a number of reasons:

2

- As a threshold matter, Georgia courts – in almost identical situations – have consistently held that water runoff and noxious odors are "pollutants" that fall squarely within the pollution exclusion.

- Any alleged damages related to water runoff do not create coverage because such damages do not arise out of an "occurrence".

- Any damages related to the chickens, including those related to the foul odors, took place *after* the Associated Indemnity policy expired.[2]

- There is no duty to indemnify for the Underlying Lawsuit because Chambers has admitted he has not suffered from "bodily injury".

- There are no allegations of a "personal and advertising injury".

- Chambers' request for attorney's fees is not covered under the Policy.

Nor does Associated Indemnity have a duty to indemnify the Hughes for any amounts it pays in settlement of, or to satisfy any judgment that may be rendered against them, in the Underlying Lawsuit. "[A]n insurer's duty to defend is broader than the duty to indemnify." Shafe v. Am. States Ins. Co., 288 Ga. App. 315, 317, 653 S.E. 2d 870, 873 (2007). Preliminarily, the absence of the duty to defend is dispositive with respect to the duty to indemnify. Travelers Indem. Co. of Conn. v.

---

[2] The insurance carrier on the risk for the Hughes, after Associated Indemnity, is Lloyd's of London. Associated Indemnity understands Lloyd's of London has acknowledged a duty to defend the Hughes for the Underlying Lawsuit under a reservation of rights.

Peachstate Auto Ins. Agency, Inc., 2019 WL 578290, *5 (N.D. Ga. Feb. 12, 2019). Because Associated Indemnity never had a duty to defend the Hughes in the Underlying Lawsuit for the reasons discussed above, it follows that Associated Indemnity also does not have a duty to indemnify the Hughes for the Underlying Lawsuit.  See National Cas. Co. v. Pickens, 582 Fed. Appx. 839, 841 (11th Cir. 2014) (applying Georgia law) ("If there is no duty to defend, there is no duty to indemnify."); Maryland Cas. Co. v. Jacob Ward, MD, LLC, 2015 WL 11237022, *6 (N.D. Ga. July 31, 2015) (noting that when there is no duty to defend, there is no duty to indemnify).

Even if this Court were to find that Associated Indemnity has a duty to defend the Hughes (which it does not), the undisputed material facts demonstrate that Associated Indemnity has no duty to indemnify the Hughes for any of the damages sought in the Underlying Lawsuit.  Whether an insurer has a duty to indemnify is determined by the facts.  InterFix, LLC v. St. Paul Fire and Marine Ins. Co., 2011 WL 13217198, *2 (N.D. Ga. Dec. 12, 2011).  Here, the damages Chambers claims for the water runoff and foul odors fall squarely within the Policy's pollution exclusions.  Further, any damages Chambers claims to have suffered related to the water runoff were the result of the Hughes' construction of

4

the poultry farm, which under Georgia law, does not constitute an "occurrence" under a general liability policy such as the policy at issue here.

Moreover, the Associated Indemnity policy had already expired by the time the chickens were first introduced to the chicken farm.  Therefore, any damages claimed by Chambers that are related to the chickens, including the foul odors, fall completely outside of Associated Indemnity's policy period.

Finally, because the Chambers' property is unoccupied, and the Hughes are not Chambers' landlord or lessor, the claims against the Hughes do not fall within the Policy's "personal and advertising injury" coverage.

## STATEMENT OF FACTS

Chambers sued the Hughes and Koch Foods of Gainesville, LLC ("Koch Foods") in the Superior Court of Dade County, Georgia, Civil Action File Number 18-CV-00021 (the "Underlying Lawsuit").  Plaintiff's Statement of Undisputed Material Facts ("SUMF") at ¶1.  The Hughes have sought defense and indemnity coverage for the Underlying Lawsuit under the general liability policy issued by Associated Indemnity, which was in effect from August 3, 2015 to February 3, 2016.  Id. at ¶2.  Associated Indemnity is defending the Hughes pursuant to a reservation of rights.  Id. at ¶3.

5

## I.     **Allegations of the Underlying Lawsuit**

The Hughes are owners of Fox Valley Farm (hereinafter referred to as "the Poultry Farm") in Rising Fawn, Georgia.  Id. at ¶4.  The Poultry Farm abuts 14.7 acres of land owned by Chambers ("Chambers Property").  Id. at ¶5.  Koch Foods supplies chickens to the Hughes and compensates them for raising the chickens.  Id. at ¶6.

The Hughes constructed changes to and cleared a large portion of their land and failed to take measures for erosion control.  Id. at ¶7.  The Hughes' operations at the Poultry Farm caused storm water runoff onto the Chambers Property.  Id. at ¶8.  This excess storm water runoff has allegedly caused actual damage to the Chambers Property.  Id.

Chambers also alleges that he has "suffered needlessly due to the noxious and sickening odor produced by chicken manure emanating from" the Poultry Farm.  Id. at ¶9. These noxious and sickening odors "have persisted since soon after the poultry farm populated the barns …."   Id.  Koch Foods first delivered chickens to the Poultry Farm in August of 2016, approximately six months *after* the Policy issued by Associated Indemnity already expired on February 3, 2016.  Id. at ¶10.

Chambers has asserted the following causes of action against the Hughes: nuisance (Count I); negligence (Count II); trespass (Count III); punitive damages (Count IV); and attorney's fees (Count V). Id. at ¶¶11-15.

## II.   The Undisputed Material Facts

### a. The Properties

The Chambers Property is undeveloped and does not presently have an address. Id. at ¶16. Although Chambers has owned the Chambers Property for 23 years, he has never constructed a residence on it. Id. at ¶17. The Chambers Property has never been used for residential, commercial or agricultural purposes. Id.

The Poultry Farm includes four chicken houses. Id. at ¶18. A metal building has been erected on the Poultry Farm, which functions as an office/storage facility. Id. Further, the Poultry Farm contains a large deep freezer, which houses dead chickens. Id. The Poultry Farm also contains a retention pond. Id.

### b. Chambers' Alleged Damages

The Chambers Property is allegedly experiencing damage from water runoff. Id. at   ¶8. This water runoff is the result of the Hughes' alleged construction of the Poultry Farm. Id. at ¶¶7-8.

Additionally, Chambers asserts that the Poultry Farm is causing noxious odors.  Id. at ¶20.  It is undisputed that the smell is caused by the chickens at the Poultry Farm.  Id.  Importantly, Chambers first experienced problems with the chickens in the Poultry Farm in September 2016, approximately a month after the chickens were put in the farm.  Id. at ¶23.  This fact is critical because Koch Foods did not deliver the chickens to the Poultry Farm until August of 2016, approximately six months *after* the Policy issued by Associated Indemnity expired on February 3, 2016.  Id. at ¶21.  In fact, the contract between the Hughes and Koch Foods was not executed until September 8, 2016, Id. at ¶22, well after the Associated Indemnity policy expired.

Finally, while the Poultry Farm was in the process of being constructed, Chambers' attorney sent a letter to the Hughes, dated December 21, 2015, which conveyed Chambers' opposition to the Poultry Farm because of Chambers concerns regarding potential health issues.  Id. at ¶20.  The letter further stated that Chambers was concerned about the potential increase in smells and flies because of the Poultry Farm.  Id.  However, despite those prior concerns, there is no genuine dispute that Chambers, as of March 18, 2018, had not suffered any health problems because of the Poultry Farm.  Id. at ¶24.

### III.   <u>The Associated Indemnity Policy</u>

The Hughes have sought defense and indemnity for the Underlying Lawsuit from Associated Indemnity, under Farm Policy FRB06669626, which was effective from August 3, 2015 to February 3, 2016 ("Policy"). <u>Id.</u> at ¶2.

a. *Bodily Injury and Property Damage*

The Bodily Injury and Property Damage section of the Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." <u>Id.</u> at ¶25. The insurance "applies to 'bodily injury' and 'property damage' only if … [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence'" and the "'bodily injury' or 'property damage' occurs during the policy period." <u>Id.</u>

The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" and the term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." <u>Id.</u> at ¶26.

b. *Personal and Advertising Injury*

The Personal and Advertising Injury section of the Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages

because of 'personal and advertising injury' to which this insurance applies." Id. at ¶29. The definition of "personal and advertising injury" includes the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." Id. at ¶30.

### c. Pollution Exclusions

The Bodily Injury and Property Damage section of the Policy excludes coverage for damages for "bodily injury" or "property damage" "arising out of the actual, alleged, or threatened dispersal, seepage, migration, release or escape of 'pollutants' … [a]t or from any premises, site or location which is or was owned or occupied by … any insured." Id. at ¶27.

The Personal and Advertising Injury section of the Policy is subject to Exclusion M, which precludes coverage for "personal and advertising injury" that "arise[es] out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time", and  Exclusion N, which precludes coverage for any loss, cost, or expense arising out of any "[r]equest, demand, order or statutory or regulatory requirement that any insured or … test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, 'pollutants' …." Id. at ¶31.

### d. *Supplementary Payments Provision*

The Policy's Supplementary Payments provision provides that Associated Indemnity "will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend … [a]ll court costs taxed against the insured in the 'suit'." Id. at ¶32.   However, the provision further provides that "these payments *do not* include attorney's fees or attorneys' expenses taxed against the insured." Id. (emphasis added).

## ARGUMENT AND CITATION TO AUTHORITY

### A. **Summary Judgment Standard**

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact."  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (internal quotation marks omitted) (first alteration in original).  Once the moving party makes such a showing, the burden shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence that show a genuine

issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

As jurisdiction in this case is based on diversity of citizenship and the Policy was delivered in Georgia, the substantive law of Georgia controls the contractual obligations of the parties.  Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998).  Under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."  Hays v. Ga. Farm Bureau Mut. Ins. Co., 314 Ga. App. 110, 111, 722 S.E.2d 923, 925 (2012) (internal quotation marks omitted).  As a result, "[w]here the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured."  Reed v. Auto-Owners Ins. Co., 284 Ga. 286, 287, 667 S.E.2d 90, 92 (2008).  "The one claiming a benefit has the burden of proving that a claim falls within the coverage of the policy."  Ga. Farm Bureau Mut. Ins. Co v. Hall Cnty., 262 Ga. App. 810, 812, 586 S.E.2d 715, 717 (2003).

Because the determination of whether policy language applies to a particular circumstance presents a question of law for the Court, courts applying Georgia law have long held that insurance disputes are well-suited for adjudication by summary

judgment.  Nationwide Mut. Fire Ins. Co. v. Somers, 264 Ga. App. 421, 423, 591 S.E.2d 430, 433 (2003).  That is exactly the case here: based on the allegations of the complaint in the Underlying Lawsuit and undisputed facts, Associated Indemnity has no duty to defend or indemnify the Hughes for the Underlying Lawsuit as a matter of law.

**B. The Pollution Exclusions Preclude Coverage for the Underlying Lawsuit**

As described above, both the Bodily Injury and Property Damage and the Personal and Advertising sections of the Policy are subject to pollution exclusions. SUMF at ¶¶27, 31.  Courts applying Georgia law have consistently held that water runoff and foul odors both fall squarely within the definition of "pollutants". Hence, the Policy's pollution exclusions entirely preclude coverage for the Underlying Lawsuit.

There is no dispute that water runoff qualifies as a "pollutant" under the Policy's Pollution Exclusion.[3]  In a factually analogous case, a construction project caused storm water runoff onto a neighbor's property.  Centro Dev. Corp. v. Central Mut. Ins. Co., 2017 WL 3449580, *1 (N.D. Ga. July 10, 2017). Importantly, the policy in Centro Dev. Corp. included the exact same "pollution exclusion" found in the Policy.  Id.  The court held that the storm water runoff

---

[3] The Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  SUMF at ¶28.

unambiguously qualified as a "pollutant" under the pollution exclusion, such that the pollution exclusion barred defense and indemnity for the insured. <u>Id.</u> at *3. The trial court's decision of no coverage was recently affirmed by the Eleventh Circuit, where the Circuit Court ruled that "the pollution exclusion is unambiguous and the storm water qualifies as a pollutant under the policy." <u>Centro Dev. Corp. v. Central Mut. Ins. Co.</u>, 720 Fed. Appx. 1004, 1005 (11th Cir. 2018)(applying Georgia law).

The same result was reached in <u>Travelers Indem. Co. v. Douglasville Dev. LLC</u>, 2008 WL 4372004 (N.D. Ga. Sep. 19, 2008). In <u>Douglasville</u>, the insured was developing a property and, in the process, cleared certain land and earthwork. <u>Id.</u> at *1. Landowners whose properties were adjacent to the development project filed suit against the insured for excess water runoff onto their properties caused by the development project. <u>Id.</u> at *2. In determining whether silt, sediment and storm water fell within the purview of the pollution exclusion, the court examined the definition of "pollutant", which was identical to the definition found in the Associated Indemnity Policy. <u>Id.</u> at *6. Relying on Eleventh Circuit precedent, the court held that silt, sediment and storm water runoff fit within the ordinary meaning of "irritant" and "contaminant". <u>Id.</u> at *7 <u>citing</u> <u>Owners Ins. Co. v. Lullwater Apartments, LLC</u>, No. 02-14556 (11th Cir. Dec. 30, 2002). The court

concluded that the insurer had neither the duty to defend nor indemnify the insured for any claims relating to the silt, sediment and water runoff, as such claims were excluded by the pollution exclusion. Douglasville, 2008 WL 4372004, at *6-9.

In Essex Ins. Co. v. H&H Land Dev. Corp., 525 F.Supp.2d 1344, 1345 (M.D. Ga. 2007), certain homeowners sued a development company and alleged that surface water runoff from the development was damaging their property. In holding that the insurer had no duty to indemnify its insured for the underlying suit, the court found that water runoff qualified as a "pollutant" and, therefore, the pollution exclusion altogether precluded coverage. Id. at 1352-53.

The above decisions are just the most recent rulings in a line of cases where Georgia courts applying the pollution exclusion preclude defense and indemnity coverage for claims nearly identical to the Underlying Lawsuit.

Like water runoff, courts in Georgia have also held that odors also qualify as "pollutants" in the context of liability policy pollution exclusions. For example, in Recyc Systems Southeast, LLC v. Farmland Mut. Ins. Co., 2018 WL 2247247, *2-3 (M.D. Ga. May 16, 2018), the court determined whether noxious odors that emanated from a chicken farm's waste pond constituted a "pollutant". The court held that "the alleged noxious odors plainly fall within the Policy's unambiguous

15

definition of 'pollutants'" and thus "the pollution exclusion unambiguously excludes coverage for the claim …." Id. at *3.

Similarly, in Illinois Union Ins. Co. v. William C. Meredith Co., 2009 WL 10669607, *2 (N.D. Ga. June 5, 2009), the policy contained a definition of "pollutant" identical to the one found in the Associated Indemnity Policy. The insured was sued for liability related to odors caused by the curing process for wood. Id. The court held that "[i]n this instance, the complaints assert injury caused by, *inter alia*, odors, coverage for which is clearly excluded under the Policies" under the pollution exclusion. Id

The Underlying Lawsuit alleges that the Poultry Farm's construction causes storm water discharges onto the Chambers Property, which has caused "actual damage to" Chambers Property. SUMF at ¶8. Likewise, the Underlying Lawsuit alleges that Poultry Farm causes foul odors. Id. at ¶9. Based on these allegations, the undisputed facts, and the holdings in the above referenced cases, the water runoff and foul odors unambiguously qualify as "pollutants". Therefore, Associated Indemnity has no duty to defend the Hughes for the Underlying Lawsuit under the Policy's pollution exclusions.

Because Associated Indemnity has no obligation to defend the Hughes for the Underlying Lawsuit, it necessarily follows that Associated Indemnity has no

duty to indemnify the Hughes for the Underlying Lawsuit as well.  <u>Pickens</u>, 582 Fed. Appx. at 841 (holding there is no duty to indemnify when there is no duty to defend).  However, even if the Court were to find that Associated Indemnity has a duty to defend the Hughes for the Underlying Lawsuit (which Associated Indemnity denies), the undisputed material facts are that the Chambers seeks damages related to water runoff and foul odors.  <u>SUMF</u> at ¶¶8, 9, 20, 21.  Thus, because water runoff and foul odors qualify as "pollutants" under the Policy's pollution exclusion, Associated Indemnity is entitled to declaratory relief that it has no duty to indemnify Hughes for the Underlying Lawsuit.

## C. <u>The Water Runoff Damage Does Not Arise Out of an "Occurrence"</u>

The Bodily Injury and Property Damage section of the Policy "applies to 'bodily injury' and 'property damage' only if … [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence'."  <u>SUMF</u> at ¶25.  Here, the allegations of the Underlying Lawsuit, as well as Chambers' claims for damages, are all related to water runoff or odors caused by the Hughes' construction and every-day operation of the Poultry Farm.  There are no allegations or facts of any accidental event giving rise to Chambers' claims.  As such, there is no duty to defend or duty to indemnify the Hughes for the Underlying Lawsuit.

In a case almost identical to this one, an insured subdivision developer was sued for nuisance, trespass, negligence and punitive damages for various lawsuits arising out of the escape and release of storm water, silt, mud, dirt, and debris runoff. Auto-Owners Ins. Co. v. McMillan, 2006 WL 8431823, *1 (N.D. Ga. Feb. 3, 2006). Like the Associated Indemnity Policy, the policy in McMillian defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at *2. The court initially held that the term "accident", at least within the context of an "occurrence", is defined as "an unintended happening rather than one occurring through intention or design." Id. at *3. Under this definition, the McMillan court ruled that "the insurance policies at issue … provide coverage from injury resulting from accidental acts, but not for an injury accidentally caused by intentional acts." Id. at *3 citing Owners Ins. Co. v. James, 295 F. Supp. 2d 1354, 1361 (N.D. Ga. 2003). Because the nuisance, negligence and trespass in McMillan – the alleged runoff of storm water, silt, mud, dirt and debris – was a consequence of the developer's development of the property (which can only considered to be intentional), the court held there was no "occurrence". 2006 WL 8431823 at *3.

A similar conclusion was reached by the court in Travelers Indem. Co. v. Douglasville Dev. LLC, 2008 WL 4372004, *9 (N.D. Ga. Sep. 19, 2008). The

<u>Douglasville</u> court held that it was undisputed that the damages alleged by the claimants, "although unintended, were caused by [the insured's] intentional construction activities and the mechanisms that Defendant put in place to guard against excess run-off." <u>Id.</u>  Accordingly, the court ruled that the alleged damages from the water runoff did not arise out of an "occurrence".  <u>Id.</u>

Finally, in an identical case, a farmowner sued his farm liability carrier and sought coverage for water runoff claims brought by his neighbor.  <u>Georgia Farm Bureau Mut. Ins. Co. v. Vanhuss</u>, 243 Ga. App. 26, 532 S.E.2d 135, 136 (Ga. App. Ct. 2000).  It was alleged the insured "committed trespass by diverting the natural flow of water and sediment onto the plaintiffs' properties …." <u>Id.</u>  The court held the insurer had no duty to defend or indemnify its insured because the complaint alleged that the farmowner's actions did not qualify as an "occurrence".  <u>Id.</u>

The undisputed facts of this matter fall squarely within Georgia law and compel a finding that, as a matter of law, that any damages related to the water runoff do not arise out of an "occurrence".  The Underlying Lawsuit alleges that the Hughes constructed changes to and cleared a large portion of their land and failed to take measures for erosion control, which caused storm water runoff onto the Chambers Property.  <u>SUMF</u> at ¶¶7-8.  Like the insureds in <u>McMillan</u>, the Hughes' development of the Poultry Farm, which Chambers claims caused the

alleged water runoff, was not accidental but a result of the Hughes' every-day business operations.  Based on the allegations, undisputed facts, and Georgia law, the claims and damages related to the alleged water runoff do not arise out of an "occurrence".  Thus, this Court should find, as a matter of law, that Associated Indemnity has no duty to defend the Hughes in the Underlying Lawsuit.

### D. <u>There Is No Coverage for Any "Bodily Injury" or "Property Damage" Taking Place After the Associated Indemnity Policy Expired</u>

The Policy only covers damages for "bodily injury" or "property damage", which "occurs during the policy period."  <u>SUMF</u> at ¶25.  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  <u>Id.</u> at ¶26.  Under Georgia law, the relevant inquiry is when the "bodily injury" or "property damage" occurred, not when the event that caused such damage occurred. <u>Nationwide Property & Cas. Ins. Co. v. Sewell Vault and Monument, Inc.</u>, 2012 WL 13028694, *3 (N.D. Ga. Feb. 13, 2012) <u>citing</u> <u>Owners Ins. Co. v. James</u>, 295 F.Supp.2d 1354, 1362 (N.D. Ga. 2003).

Chambers himself has admitted, that as of March 8, 2018, more than two years after the Policy expired, he was not suffering from nor had he suffered any health problems due to the Poultry Farm's operations.  <u>Id.</u> at ¶23.  This admission

proves that Chambers did not suffer any "bodily injury" at all, let alone while the Policy was in effect.

Chambers alleges that he has "suffered needlessly due to the noxious and sickening odor produced by chicken manure emanating from" the Poultry Farm. Id. at ¶9.  These noxious and sickening odors "have persisted since soon after the poultry farm populated the barns …."  Id.  However, it is undisputed (both Chambers and the Hughes have admitted),[4] that Koch Foods first delivered chickens to the Poultry Farm in August of 2016, approximately six months *after* the Policy expired on February 3, 2016.  Id. Therefore, under no circumstances can Associated Indemnity have a duty to defend the Hughes based on any claims related to damages caused by odors or nuisances because such odors or nuisances did not take place during the policy period for the Associated Indemnity Policy. Nor can Associated Indemnity have any duty to indemnify the Hughes for such damages.

On December 21, 2015, a little more than a month before the Policy expired, Chambers' attorney sent a letter to the Hughes, which conveyed Chambers' opposition to the Poultry Farm because of Chambers' concerns regarding potential health issues.  Id. at ¶19.  The letter further stated that Chambers was concerned

---

[4] This section of the motion assumes that the claims related to the odors qualify as an "occurrence" and no exclusions apply to preclude coverage related to the odors; both of which assumptions are highly unlikely.

about potential increase in smells and flies because of the Poultry Farm. <u>Id.</u> Although Chambers testified that he is currently being bothered by noxious odors emanating from the chickens at the Poultry Farm, <u>Id.</u> at ¶ 20, it is undisputed that Chambers first experienced issues with the odors and nuisances in September of 2016, approximately a month after the chickens were delivered to the Hughes' Poultry Farm. <u>Id.</u> at ¶23. It is undisputed that Koch Foods first delivered chickens to the Poultry Farm in August of 2016, approximately six months *after* the Policy had expired on February 3, 2016. <u>Id.</u> at ¶21. Indeed, the initial contract between the Hughes and Koch Foods was first executed on September 8, 2016, seven months after the Policy expired. <u>Id.</u> at ¶22.

Based on these undisputed facts, Associated Indemnity has no duty to indemnify the Hughes for any claims related to the odors or nuisances, all of which could have taken place (if at all), only *after* the Policy expired.

### E. <u>No Personal And Advertising Injury Offense is Alleged</u>

The Personal and Advertising Injury section of the Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." <u>SUMF</u> at ¶29. The definition of "personal and advertising injury" includes the "wrongful eviction from, wrongful entry into, or invasion of the right of private

occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." Id. at ¶30. The wrongful eviction offense does not create coverage for two important reasons: (1) the Chambers Property was unoccupied; and (2) the Hughes are not the "owner, landlord or lessor" of the Chambers Property.

First, there is no dispute that there was no trespass or wrongful entry into "the right of private occupancy of a room, dwelling or premises that a person occupies …." Id. at ¶30. The Chambers Property is comprised of 14.7 acres of undeveloped property. Id. at ¶¶16-17. Although Chambers has owned the Chambers Property for approximately 23 years, he has never constructed a residence on it and Chambers has never used it for residential, commercial or agricultural purposes. Id. Pursuant to these undisputed facts, the complaint does not create a duty to defend or indemnify under the Personal and Advertising Injury Section of the Policy because the Chambers Property was and is unoccupied.

Second, in order for there to be defense or indemnity coverage, the wrongful eviction, wrongful entry into or invasion must be "committed by or on behalf of its owner, landlord or lessor." Id. at ¶29. The allegations of the Underlying Lawsuit are that the Chambers Property is entirely owned by Chambers. Id. at ¶5. Chambers is the sole owner of the 14.7 acres of land that comprise the Chambers

Property.  Id. at ¶¶16-17.  Because the water runoff and foul odors are allegedly being committed by the Hughes, who do not qualify as the "owner, landlord or lessor" of the Chambers Property, the wrongful eviction offense does not give rise to a duty to defend or indemnify under the Personal and Advertising Injury Section of the Policy.  See e.g., Nationwide v. Sewell, 2012 WL 13028694, at *4-5 (when insured allegedly desecrated underlying plaintiff's gravesite, court determined there was no duty to defend under wrongful eviction offense because insured was not an "owner, landlord or lessor" of the cemetery where gravesite was desecrated).

**F. <u>The Supplementary Payments Provision Does Not Provide Coverage for Chambers' Attorney's Fees and Expenses</u>**

Mr. Chambers seeks attorney's fees from the Hughes.  SUMF at ¶15. However, such attorney's fees are not covered under the Policy.  Under no circumstances would such fees be owed by Associated Indemnity.

The Supplementary Payments provision of the Policy provides that Associated Indemnity "will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend … [a]ll court costs taxed against the insured in the 'suit'."  Id. at ¶32.  But the provision further provides that "these payments do not include attorney's fees or attorneys' expenses taxed against the insured."  Id.  See Essex Ins. Co. v. Do It All Investment Group, Inc., 2012 WL

13009098, *7 (N.D. Ga. Sep. 21, 2012) (holding that Supplementary Payments provision to be unambiguous and did not require to insure underlying plaintiff's demand for attorney's fees).   As such, Associated Indemnity is entitled to a declaration that it is not required to pay any award of attorneys fees, (either on settlement or because of a judgement) in favor of Chambers and against the Hughes in the Underlying Lawsuit.

## CONCLUSION

The Policy's pollution exclusions unambiguously bar coverage for the Underlying Lawsuit.   Alternatively, Associated Indemnity's motion should be granted because any damages related to the water runoff do not arise out of an "occurrence" and because any damages related to the odors took place *after* the Associated Indemnity policy expired.   Moreover, the Underlying Lawsuit fails to allege a "personal and advertising injury" offense and Chambers' request for attorney's fees is not covered.   For these reasons, Associated Indemnity respectfully requests that this Court grant partial summary judgment in its favor.

FREEMAN MATHIS & GARY, LLP

*/s/ Seth F. Kirby*
Seth F. Kirby
Georgia Bar No. 443367
skirby@fmglaw.com

*Attorney for Plaintiff*

25

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

Of Counsel, *Pro Hac Vice*
*to Be Applied For*
Mary McPherson
MMcPherson@tresslerllp.com
Aon Hussain
AHussain@tresslerllp.com

TRESSLER LLP
2 Park Plaza, Suite 1050
Irvine, CA 92614
(949) 336-1224 (Telephone)
(949) 752-0645 (Facsimile)

## <u>CERTIFICATE OF FONT COMPLIANCE</u>

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing **PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This <u>29th</u> day of March, 2019.

/s/ Seth F. Kirby
Seth F. Kirby
Georgia Bar No. 443367
skirby@fmglaw.com

*Attorney for Plaintiff*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants:

John H. Peavy, Jr., Esq.
PEAVY LAW, LLC
563 Spring Street, N.W.
Atlanta, GA 30308

Richard H. Middleton, Jr., Esq.
R. Scott Harrison, Esq.
MIDDLETON,  LLC
P.O. Box 10006
Savannah, GA 31412

This <u>29th </u>day of March, 2019.

*/s/ Seth F. Kirby*
Seth F. Kirby
Georgia Bar No. 443367
skirby@fmglaw.com
*Attorney for Plaintiff*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)
4846-4634-7657v.1